THE PEOPLE OF PUERTO RICO, Plaintiff and Appellee, *v.* GREGORIO LEÓN AQUINO ET AL., Defendants and Appellants.

No. 11868.—Argued April 9, 1947.—Decided July 7, 1947.

*Francisco Torres Aguiar* for appellants. *Luis Negrón Fernández, Attorney General,* and *Joaquín Correa Suárez, Prosecuting Attorney,* for appellee.

MR. JUSTICE MARRERO delivered the opinion of the Court.

Of the thirteen errors charged by the defendants herein against the lower court, the third is to the effect that the latter erred "in permitting and holding as proper the verdict, since it is contrary to the *crime* and to the *evidence.*"

On March 28, 1945, the District Attorney of San Juan filed an information against the appellants herein for the crime of rape. The trial was held on June 7 of that same year, and the jury rendered a verdict of guilty against all of them for said crime. The alleged prosecutrix herein was

a deaf-mute called Carmen María Soto, who testified interpreted by her sister Leonida Soto. Although the second of the errors assigned was that the court erred in allowing Leonida Soto, sister of the alleged injured person, to act as her interpreter, since she was not qualified therefor, for the purpose of discussing the third error we will assume that the designation was properly made and that Carmen María Soto was correctly interpreted by her sister.[1]

While testifying as a witness, and interpreted in the manner already mentioned, Carmen María Soto stated that one day the defendants took her by surprise and detained her since half-past six in the afternoon until three o'clock in the morning of the following day; that they struck her in the chin, on the back and on the chest, and also threw her on the floor, and that the three of them (pointing to the defendants) had sexual intercourse with her. Upon being asked by the district attorney with which part of the body was that they had sexual intercourse with her, she replied that *"it was with the dirty part"*; that Margarida did it twice, Daniel Morales three times, and Gregorio de León, three times.

Dr. Arsenio Comas, medical expert called by The People, testified that Carmen María Soto was taken to him in the morning of September 27, 1944, with instructions that he' examine her;[2] that he did so noting that she had bruises on the left thumb and on the chin, a scratch two inches long over the left shoulder blade, scratches on the chest, on the left cheek, and on one of the fingers of her left hand, as well as numerous scratches on the right forearm. He also stated that he had examined her vagina and that "she was a woman, stated by her." Dr. Comas continued testifying that Carmen María Soto was menstruating and that *she did not show*

---

[1] See *People* v. *Arroyo*, 38 P.R.R. 473.

[2] Although in the information it is alleged that the crime charged was committed on the evening of September 24 to 25, however, at the beginning of the trial the district attorney requested leave to amend the information so as to read that the crime was committed during the evening of September 25 to 26, 1944, and the court so ordered.

*any signs of violence in her vulva.* Subsequently, on cross-examination by counsel for the defense, he testified that the *prosecutrix Carmen María Soto did not give any indication that she had been raped.*

Although it is true that upon being questioned later on by one of the juries as to "whether they had sexual intercourse with her" Carmen María Soto answered in the affirmative and stated "yes, the three of them," however, the testimony of Dr. Comas and the statements of the prosecutrix herself when specifically asked with what part of the body was that they had had sexual intercourse and her answer "that it was with the dirty part," lead us to the conclusion that, although it was proved that the three defendants had carnal copulation with the prosecutrix by means of force and violence, they did not perform said act with her in the ordinary manner but rather in an unnatural way. If, as stated by Carmen María Soto, the defendants had sexual intercourse with her on seven occasions and those acts were violently carried out, it was natural for said woman to exhibit signs of violence in the vagina. However, Dr. Comas, we repeat, testified as to the absence of such signs, and on the other hand, the prosecutrix herself emphatically stated that the act was committed by the dirty part.

Since we have reached the conclusion that the sexual act was not done in the usual way but against nature, is it possible to sustain the verdict? We do not think so. The crime of rape is defined by § 255 of the Penal Code and punished by imprisonment in the penitentiary for a minimum term of one year. The infamous crime against nature is not specifically defined by our Code (see § 278 of the Penal Code, as amended by Act No. 42 of May 4, 1943, p. 106) [3] and is punishable by imprisonment in the penitentiary for a minimum term of one and a maximum term of ten years. They are therefore two entirely separate and distinct crimes, and

---

[3] See *People* v. *Díaz*, 35 P.R.R. 212.

within a prosecution for the crime of rape, a verdict for the infamous crime against nature can not be rendered.

 Section 283 of the Code of Criminal Procedure of Puerto Rico, adopted from California, does not contain the provision which appears in its equivalent there, which is § 1151 of the Penal Code of said State, to wit: "When the defendant is acquitted on the ground of variance between the indictment and the proof, the verdict must be 'not guilty by reason of variance between indictment and proof.'" In Puerto Rico the practice followed in those cases where the verdict is contrary to the law or against the evidence, is to request a new trial in the same lower court.[4] In the case at bar, the record does not show that a new trial was requested or that the judge of the lower court was given an opportunity to correct the error. The question, as we have already indicated, is raised for the first time in the brief of the appellants.

 In the case of *People* v. *González,* 17 P.R.R. 1140, the District Attorney of San Juan charged the defendant with false personation. The facts alleged in the information rather tended to charge the crime of larceny. Notwithstanding this, the jury found the defendant guilty of the crime of false personation. This Court held that if the verdict of the jury had limited itself to the word "guilty," it would have been sustained by us, but that, since said verdict declared the defendant guilty of the crime of false personation which was not the crime determined by the facts set forth in the information the defendant had been sentenced for a crime not charged against him, and therefore the judgment should be reversed. The case at bar is not identical to that of *People* v. *González, supra,* but there is a certain similarity between them as to the question of law involved. There the defendant was found guilty of a crime, with which he was not charged in the information. Here the evidence shows that the crime

[4] See subdivision 6, § 303, Code of Criminal Procedure.

526

said to have been committed is not the one charged in the information but another one. The variance was clear in the former case. And so it is also in the present one.

The judgment appealed from should be reversed and the defendants acquitted without prejudice to the filing by the district attorney of new informations against the appellants herein for the infamous crime against nature, if in his judgment the same are proper.